**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-01043-CMA-KLM

PAUL ROMERO,

      Plaintiff,

v.

DENVER PUBLIC SCHOOLS, DISTRICT NO. 1, a Colorado School District,
DEBRA RODRIGUEZ, in her individual and official capacities,
SCOTT BARNES, in his individual and official capacities,
BRITTANY DEW, an individual, and
FRED MARTINEZ, an individual,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

Plaintiff is a former public school employee. His employment was terminated in the spring of 2008 and he is suing the school district for which he worked and four former colleagues over the circumstances surrounding his termination. He alleges due process violations, negligence, libel, slander, breach of contract, and promissory estoppel.

The matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 45.) Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, 1367. For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

# I.  BACKGROUND

## A.  *Facts*

The following facts are undisputed unless noted.  The Court will elaborate on them, as needed, in its analysis.

Plaintiff worked for Denver Public Schools, District No. 1 ("The District"), a public school district, from 1986 until his termination in 2008.[1] He was hired as a part-time custodial helper.[2] Over the next several years, he was promoted and served in various capacities at several different District schools.  He was eventually promoted to the position of facility manager.[3] In 2001, he began working as facility manager at Force Elementary School.[4]

In that position, he supervised the assistant facility manager and other custodial employees.  During the relevant period, Defendant Fred Martinez was an assistant facility manager at Force and Defendant Brittany Dew was a part-time custodial employee at Force.  Plaintiff supervised them both.  Throughout this period, Defendant Debra Rodriguez, as operations supervisor, was Plaintiff's immediate supervisor.  Defendant Scott Barnes was a director of human resources for the District.[5]

---

[1] (Doc. # 1-2, Complaint, ¶¶ 4, 5.)

[2] (*Id.*)

[3] (Doc. # 45-2, Ex. B, Deposition of Plaintiff, p. 43:5-7.)

[4] (*Id.* at 46:2-7.)

[5] (Doc # 1-2, ¶¶ 6-10; Doc. # 45-3, Ex. C, Deposition of Fred Martinez, p. 18-19:1-25 and p. 23:9-10; Ex. E, Deposition of Debra Rodriguez, p. 10:3-5 and p. 12:5-6; Ex. F, Deposition of Brittany Dew, p. 10:4-11; Doc # 45-4, Ex. M, Deposition of Scott Barnes, p 5:10-22.)

During the 2007-2008 Christmas break, Plaintiff and Ms. Dew worked alone together on several occasions, cleaning bathrooms, sweeping hallways, cleaning stairways, and changing lights in the media center. Ms. Dew claims that Plaintiff sexually harassed her during this period—making inappropriate sexual comments and staring at her buttocks while she stood on ladder changing a light bulb. Plaintiff denies Ms. Dew's allegations.[6] After Christmas break, Ms. Dew spoke to Mr. Martinez about what allegedly happened.

During the Spring semester of 2008, Plaintiff left Ms. Dew several notes criticizing her work performance.[7] Nevertheless, in March 2008, Plaintiff gave Ms. Dew a good performance evaluation; he wrote that Ms. Dew "has done a great job for us here at Force."[8]

On April 3, 2008, Ms. Dew submitted a written complaint to Plaintiff's supervisor, Ms. Rodriguez, alleging that Plaintiff was sexually harassing her. Ms. Rodriguez, along with Ms. Dorothy Lessem, the human resources director in charge of facilities management, interviewed Ms. Dew about her allegations. Ms. Rodriguez and Ms. Lessem next interviewed Mr. Martinez. Mr. Martinez confirmed that Ms. Dew had complained to him about Plaintiff's conduct.[9] He added that Plaintiff had also made other sexual comments in front of students.

---

[6] (Doc. # 47-1, Ex. 1, Deposition of Plaintiff, p 274:12-275:7.)

[7] (Doc. # 1-2., ¶¶ 10-11.)

[8] (Doc. # 45-4, Ex. H, Dew Performance Evaluation.)

[9] (Doc. # 1-2 at ¶¶ 12-14; Doc. # 45-4, Ex I, p. 13:14:18-1, Doc. # 45-3, Ex. E, p. 30:6-17.)

Based on the statements of Ms. Dew and Mr. Martinez, the District initiated an investigation into Plaintiff's alleged conduct. On April 4, 2008, Bob Mickelson, a District investigator, was assigned to conduct the investigation. On April 8, Mr. Mickelson and Ms. Rodriguez interviewed Plaintiff. They informed him that he had been accused of sexual harassment, which Plaintiff denied. At the end of the interview, Ms. Rodriguez placed Plaintiff on administrative leave with pay.[10]

On April 15, 2008, Mr. Mickelson presented the findings of his investigation to the District.[11] Based on these findings, Ms. Rodriguez decided to recommend that Plaintiff's employment be terminated.[12]

On April 22, 2008, Ms. Rodriguez gave Plaintiff a letter notifying him that she intended to recommend dismissal.[13] The letter stated that the investigation found that Plaintiff had displayed inappropriate behavior including initiating conversations with District employees, some of whom were students, about his sexual preferences and insinuating his sexual attraction towards students at the school.[14]

Plaintiff requested a pre-termination hearing according to the District's Policy GDQD-R, which outlines the procedures required for terminating full-time, classified employees such as Plaintiff.[15] Plaintiff's pre-termination hearing took place on April 29,

---

[10] (Doc. # 45-2, Ex. B, p.118:16-18, p.119: 5-25, p.120: 17-24, p.127:4-7, p.131:14-18.)

[11] (Doc. # 45-4, Ex. K.)

[12] (Doc. # 45-3, Ex. E, p. 90:8-15.)

[13] (Doc. # 45-2, Ex. B, p. 122-23:23-17.)

[14] (Doc. # 45-4, Ex. L, Letter Dated April 22, 2008.)

[15] (Doc. # 1-2, ¶ 22.)

2008.  Mr. Barnes, Director of Employee and Labor Relations, was the hearing officer at the hearing.  Plaintiff attended the hearing with two representatives from his union: Dave Borrego, President of the Facility Managers Association, and Veronica Garcia. Ms. Lessem, Mr. Mickelson and Ms. Rodriguez also attended the hearing.[16] On May 5, 2008, Mr. Barnes issued a written decision upholding the District's recommendation that Plaintiff's employment be terminated.[17]

On May 8, 2008, Plaintiff requested an independent arbitration hearing before a neutral hearing officer, pursuant to Policy GDQD-R.  He received a two-day hearing, on June 27 and July 14, 2008, before Hearing Officer John P. DiFalco.  Plaintiff was again represented by Mr. Borrego.  The District was represented by Walter Kramarz, Chief Deputy General Counsel for the District.  Both sides presented evidence.  Mr. DiFalco found the allegations against Plaintiff, as well the testimony of Ms. Dew, Mr. Martinez and the other District witnesses, to be credible.  He found Plaintiff not credible. Accordingly, on July 18, 2008, Mr. DiFalco issued a written decision recommending that the original dismissal recommendation be upheld.[18] Based on this recommendation, on August 1, 2008, Plaintiff was terminated.[19]

---

[16] (Doc. # 45-2, Ex. B, p. 240:6-12; Doc. # 45-5, Ex. M, p. 5:19-22.)

[17] (Doc. # 45-4, Ex. N, Barnes's Written Decision.)

[18] (Doc. # 1-2, ¶ 22-24; Doc. # 45-2, Ex. B, p. 249:5-12; Doc. # 45-4, Ex. P, Arbitrator's Decision, at 5, 12-17.)

[19] (Doc. # 45-5, Ex. Q, Letter from Shayne Spalten, Chief Human Resources Officer.)

**B.    Procedural History**

On April 3, 2009, Plaintiff filed suit in state court alleging ten claims.  (Doc. # 1-2*, ¶¶* 25-79.)  Defendants filed a motion to dismiss certain claims on April 27, 2009, and removed the case to this Court on May 5, 2009.  (*See* Doc. ## 1, 1-9.)

The Court granted Defendants' motion, leaving the following claims: denial of due process under 42 U.S.C. § 1983 against the District, Ms. Rodriguez, and Mr. Barnes; willful and wanton negligence against Defendants Dew and Martinez; libel *per se* against Ms. Dew; slander *per se* against Ms. Dew; three claims of slander *per se* against Mr. Martinez; breach of contract against the District; and a promissory estoppel claim against the District.

On March 4, 2010, Defendants filed a motion for summary judgment.  Plaintiff filed a response on March 25, 2010, to which Defendants replied on April 19, 2010. (Doc. ## 45, 47, 61.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* at 670-71.  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Anderson*, 477 U.S. at 256.  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

### III.  ANALYSIS

Defendants argue Plaintiff's claims should be dismissed and summary judgment entered in their favor.  Plaintiff opposes.  The Court will address each claim in turn. Because Plaintiff's due process claim is in part dependent on the existence of an

enforceable promise between him and the District, the Court will first address Plaintiff's contract claims to determine whether such a promise exists.

### A.    Plaintiff's Contract-Related Claims

Plaintiff alleges that the District is liable for (1) breach of an implied employment contract and/or (2) promissory estoppel.[20] (Doc. # 1-2, ¶¶ 66-79.)  As the basis for these claims, Plaintiff cites District Policies GDQD-R and GBAA, the Memorandum of Understanding between the Facility Managers Association and the District ("MOU"), and repeated assurances from District employees that he would not be laid-off.

### 1)    Breach of Contact

The District argues that Plaintiff's breach of contract claim fails because (1) there was no contract and (2) even if there was, the evidence presents no genuine issue of material fact regarding whether the District breached it.

"Absent an explicit understanding to the contrary, every employment relationship is presumed to be 'at-will,' meaning that either the employer or the employee may terminate the relationship at any time, without notice and without cause." *Soderlun v. Public Service Co. of Colorado*, 944 P.2d 616, 619 (Colo. App. 1997).  Plaintiff did not sign an express contract for a term of years.[21] His theory is thus premised on the existence of an implied contract.[22]

---

[20] These claims were originally leveled at Defendants Rodriguez, Barnes, and the District.  (Doc. # 1-2, ¶¶ 66-79.)  However, after the Court granted Defendants' motion to dismiss, these claims survived only as to the District.  (Doc. # 46 at 13.)

[21] (Doc. # 45-5, Ex. T ¶ 4, Affidavit of Dorothy Lessem.)

[22] For discussion on the distinction between contracts implied in law and those implied in fact, see 17 C.J.S. Contracts § 6.

To succeed on an implied contract theory under Colorado law, a discharged employee must first show that in promulgating an employment manual or policy, the employer intended to make an offer to the employee- " 'that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain.' " *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (quoting *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987)). In addition, the employee must show that his initial or continued employment constituted acceptance of and consideration for those procedures. *Id.* (citing *Continental* at 711). An offer must also contain terms "'sufficiently definite to enable the court to determine whether the contract has been performed.'" *Id.* (quoting *Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948, 952 (1960)). Finally, while the existence of an implied contract is normally a factual inquiry for the jury, the issue may be decided as a matter of law if the alleged promises are nothing more than vague assurances[23] or if there is a valid disclaimer or other undisputed facts indicating the employer did not intend to become contractually bound. *Ramirez v. The GEO Group, Inc.*, 655 F. Supp. 2d 1170, 1186 (D. Colo. 2009).

The District argues Plaintiff's breach of contract claim fails as a matter of law. In particular, it argues that because Policy GDQD-R disclaims any intent by the District to enter into a contract with classified employees, no contract existed between the District and Plaintiff. It also argues that even if there was a contract, the undisputed facts show

---

[23] *Johnson v. Cadillac Plastics Group, Inc.*, 908 F.Supp. 847, 851 (D. Colo. 1995) (internal citations and quotation marks omitted).

that it followed the procedures in Policy GDQD-R; thus, there was no breach.  In

response, Plaintiff states the basis for its contract-related claims is not limited to Policy

GDQD-R, but also includes the MOU, Policy GBAA, and repeated assurances that he

would not be laid off.[24]

### a) *Policy GDQD-R and the MOU*

The Court first considers Policy GDQD-R and the MOU.  The introduction of

Policy GDQD-R states in part that: "Continuing service classified employees shall be

entitled to the more extensive dismissal procedures.  These procedures are an effort to

maintain fair and equitable treatment of classified employees."  (Doc. 45-2, Ex. A.)  The

MOU states in part that: "Any employee . . . , shall have continuing service as an

employee during efficient performance of duties, good behavior, and continuous service

. . ."  (Doc. # 47-25, Memorandum of Understanding, Article 26, § 26.3.)[25]

---

[24] The Court notes that Plaintiff's complaint cites only Policy GDQD-R as the basis for his breach of contract and promissory estoppel claims.  (Doc. # 1-2 at ¶¶ 66-79.)   It makes no mention of Policy GBAA, the MOU, or "repeated assurances" as other bases for these claims. This omission violates one of the purposes of Fed. R. Civ. P. 8(a)(2)–providing notice to defendants of the nature of claims against them and the grounds therefor.  Despite Plaintiff's omissions, the Court will consider the MOU and Policy GBAA as alternate bases for Plaintiff's contract-related claims.  It will not, however, consider Plaintiff's claim of "repeated assurances" that he would not be laid off.  It is undisputed that Plaintiff was not laid off.  He was fired.  Thus, these "assurances" are irrelevant to Plaintiff's breach of contract claim.

[25] The full text of this section: "Any employee having served as an employee in active service in the Denver Public Schools (including the time before and after approval of this policy) on a regular full-time basis continuously and without interruption for two (2) complete years, and who shall have been or shall hereafter be re-employed for the third year immediately succeeding and so notified in writing as to those hereafter so employed, shall have continuing service as an employee during efficient performance of duties, good behavior, and continuous service without the need for recurring annual reappointment.  Absences, or leaves of absence, which have been approved by the Board of Education, or designee, are not considered as interruptions of continuous service.  Written notification of continuing service shall be furnished the employee by the Department of Human Resources."

Plaintiff's theory is that the MOU language, coupled with the procedures set forth in Policy GDQD-R, created a contract which the District breached. (Doc. # 47 at 45.) This theory fails as a matter of law.

As to Policy GDQD-R, it clearly and conspicuously disclaims any intent by the District to change the at-will status of classified employees: "The procedures do not change the at-will status of classified employees." (Doc # 45-2 at 1.) This disclaimer is the fourth sentence in the introduction to this Policy. It is conspicuous. Given this disclaimer, the District cannot be said to have manifested an intent to enter into a binding contract with Plaintiff. The Tenth Circuit has previously come to the same conclusion: "We conclude that under Colorado law, Policy GDQD-R did not create an implied contract whereby the District would not terminate [the plaintiff] except for just cause." *Jones v. Denver Public Schools*, 427 F.3d 1315, 1324 (10th Cir. 2005). Accordingly, Plaintiff's argument regarding Policy GDQD-R fails as a matter of law.[26] *See George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997) (If the employer has clearly and conspicuously disclaimed intent to enter into a contract limiting the right to discharge employees, then summary judgment is appropriate).

As to the MOU, it also provides a disclaimer, albeit on page 35 of a 41-page document: "Policy: Tenure is available under present Colorado law only with respect to

---

[26] Assuming Policy GDQD-R did create a contract between Plaintiff and the District, Plaintiff's claim would still fail because the undisputed facts show no breach. Although Plaintiff alleges that he was not terminated in accordance with Policy GDQD-R, he does not support this contested fact with evidence. Defendants, on the other hand, submitted an affidavit from Shayne Spalten, in which she swears that she was the Superintendent's designee, and thus, her "final decision" was consistent with Policy GDQD-R. (Doc. # 61-3, Affidavit of Shayne Spalten.)

teachers."  (Doc. # 47-25 at 35 §26.2.)  The Court acknowledges that the MOU

disclaimer is not as clear and conspicuous as the disclaimer in Policy GDQD-R.  That

fact alone, however, is insufficient to allow the issue to proceed before a jury.  If the

alleged promises are nothing more than vague assurances, the issue can be decided as

a matter of law.  *Johnson v. Cadillac Plastics Group, Inc.*, 908 F.Supp. 847, 851 (D.

Colo. 1995).  This is because to create an implied contract the promises must be

definite.  *See Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994).  The

portion of the MOU on which Plaintiff relies reads that "any employee . . . shall have

continuing service as an employee during efficient performance of duties, good

behavior, and continuous service."  Even if this provision addressed termination

procedures, which its title and content belies,[27] the Court notes that the terms "efficient

performance" and "good behavior" are not definite.  They are vague assurances,

essentially stating that if the employee does a good job and behaves well, he will not be

fired.  Unlike other cases dealing with detailed salary and lay-off information, this

language is "too indefinite to constitute a contractual offer which would enable a court to

determine whether a contract has been performed."[28] *Vasey*, 29 F.3d at 1465.

Accordingly, the Court finds as a matter of law that the MOU language on which Plaintiff

relies did not create a contract between Plaintiff and the District.

_____

[27] Article 26 of the MOU is titled "Continuing Service, Change of Status and School
Redesign."  (Doc. # 47.25 at 35.)

[28] An additional problem for Plaintiff is that the MOU is between the District and the
Facility Managers Association ("FMA"), Plaintiff's union.  Thus, if the Court found the MOU
created an implied contract, the contract would be between the District and the FMA.  Plaintiff
would not be a party.

### b) Policy GBAA

Plaintiff also asserts that Policy GBAA requires that the District follow certain procedures with respect to sexual harassment investigations. In particular, he cites the provisions stating that an investigation will be conducted by the principal or her designee.

The Court first finds that Policy GBAA did not create a contract between Plaintiff and the District. Plaintiff cites no evidence showing the District manifested a willingness to enter into a bargain with Plaintiff by enacting this policy. *See Vasey*, 29 F.3d at 1464. For example, he cites no evidence showing he was even aware the policy existed; without that awareness, there can be no offer. *Id.* at 1464. ("An offer in the form of an employment manual must be communicated to the employee to be effective.") But even if it were a contract, the undisputed facts show the District abided by its terms and, thus, did not breach it.

Policy GBAA does not say, as Plaintiff asserts,[29] that the principal or her designee are the only persons empowered to conduct an investigation. It states that "the principal/department head or designee shall notify the district's Title IX Officer and investigate all allegations of sexual harassment . . . ." (Doc. # 45-5, Ex. S, at 9.) Thus, the department head may do so as well. Defendant Rodriguez was the department head.[30] She undertook the initial investigation. This is undisputed.

_____

[29] (*See* Doc. # 47 at 36, 46.)

[30] (Doc. # 45-3, Ex. E, Deposition of Rodriguez, p. 7:5-19.)

13

After initiating the investigation, Rodriguez turned it over to Mr. Mickelson to complete. Again, this is undisputed. And again, this was permissible under Policy GBAA, which further states that "[u]pon receipt of a report or complaint alleging prohibited harassment, the Title IX Officer shall promptly undertake or authorize an investigation. That investigation may be conducted by School District officials or by a *designated third party*." (Doc. # 45-5 at 11.) (emphasis added). Because the evidence regarding Policy GBAA does not create a genuine issue of material fact, the Court will enter summary judgment in favor of the District regarding Plaintiff's claim that this language created a contract between the District and Plaintiff.

### 2) *Promissory Estoppel*

Plaintiff also asserts a promissory estoppel claim against the District, based in his complaint on the District's Policy GDQD-R "to maintain fair and equitable treatment of classified employees." (*See* Doc. # 1-2 at ¶¶ 74-79.) As with his breach of contract claim, Plaintiff later expanded on his theory by asserting that it was based not only on Policy GDQD-R, but also the MOU and Policy GBAA.

To support a claim for promissory estoppel based on policy provisions in an employee handbook or manual, a plaintiff must demonstrate that (1) his employer reasonably should have expected employees to consider the handbook as a commitment to follow the policy stated; (2) the employee reasonably relied on the policy to his detriment; (3) and injustice could only be avoided by enforcement of the policy. *Continental*, 731 P.2d at 712 (considering termination procedures). In proving detrimental reliance, the employee must show action or forbearance taken as a result of

the employer's alleged promises.  *See Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo. 1983).

Plaintiff's claim fails for several reasons.  First, as to Policy GDQD-R, the Court finds that the statement – "fair and equitable treatment" – is too indefinite a statement to constitute a commitment on the part of the District.  *See George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1199 (Colo. App. 1997); *Jones v. Denver Public Schools*, 427 F.3d 1315, 1325 (10th Cir. 2005) ("'vague assurances' of continued employment cannot serve as the basis for a promissory estoppel claim.").

Second, even if one can read Policy GDQD-R as creating a commitment on the part of the District, Plaintiff presents no evidence showing that he relied on this "promise."  That is, Plaintiff has presented no evidence showing that he either acted or failed to act because of the language in Policy GDQD-R promising fair and equitable treatment.  The same can be said for other policies.  Plaintiff does not point to specific facts showing detrimental reliance on Policy GBAA or the MOU.

Lastly, as to the final element of a promissory estoppel claim, the Court finds that the circumstances of this case are not such that injustice can be avoided only by enforcement of these alleged promises.  This element involves a discretionary decision for the Court, i.e., it is not a question of fact for the jury.  *Jones*, 427 F.3d at 1326.  The Court finds that the District had a well-documented independent reason for terminating Plaintiff–his alleged sexual harassment of another employee.  Thus, given these infirmities, the Court finds that Plaintiff's claim of promissory estoppel fails as a matter of law.  The Court next considers Plaintiff's due process claim.

**B.**     ***Plaintiff's Due Process Claim***

Plaintiff claims that Defendants Rodriguez, Barnes, and the District knowingly and intentionally deprived him of his liberty and property interests without due process of law. (Doc. # 1-2, ¶¶ 27-29.)

Defendants argue for dismissal on several grounds. As to the District, they argue Plaintiff's claim fails because (1) Plaintiff did not have a protected property interest in his employment; (2) his alleged liberty interest was not infringed; and (3) even if he did have a protected property or liberty interest, he received all the process he was due. In addition, Defendants Rodriguez and Barnes assert they are entitled to qualified immunity against Plaintiff's due process claim. (Doc. # 45 at 16-25; Doc. # 61 at 26.)

### 1) *Rodriguez and Barnes*

The Court first considers whether Rodriguez and Barnes are entitled to qualified immunity.

> When a defendant asserts qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff who must satisfy a heavy two-part burden. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quotation omitted). The plaintiff must show the defendant's conduct violated a constitutional right, and the right was clearly established at the time of the defendant's conduct. *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009).

*Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010).

These defendants asserted qualified immunity in their motion for summary judgment. (Doc. # 45 at 24.) Plaintiff ignored the issue in his response. (*See* Doc. # 47.) Obviously, then, Plaintiff has failed to satisfy his "heavy two-part burden." *Chavez-Rodriguez*, 596 F.3d at 713. Moreover, the Court finds that no clearly established law would have advised these defendants that their conduct violated

Plaintiff's due process rights.  Accordingly, the Court concludes that Defendants Rodriguez and Barnes are entitled to qualified immunity against Plaintiff's due process claim.

### 2)    The District

The District is not entitled to qualified immunity.[31] Thus, the Court considers the merits of Plaintiff's claim.  In assessing a due process claim, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."  *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (quotation marks omitted)).  The first prong of this test is a question of law.  *Babi v. Colorado High School Activities Ass'n*, 77 P.3d 916, 920 (Colo. App. 2003); *Moore v. Middlebrook*, 96 F. App'x. 634, 637 (10th Cir. 2004) (unpublished); *Walker v. City of Fort Morgan*, 145 F.3d 1347, *1 (10th Cir. 1998) (unpublished); *see also* 1 Education Law § 3:5 ("A protectable liberty interest is determined by the court as a matter of constitutional law . . .").  The second is a question of fact*.  See Babi*, 77 P.3d at 922.

### a)    Whether Plaintiff Had a Protected Interest

The Court first considers whether Plaintiff had a protected property or liberty interest in his employment.

### i)    Property Interest

---

[31] *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir.1985) ("Governmental entities are not entitled to any sort of immunity under § 1983.") (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)).

"An individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.' " *Teigen v. Renfrow*, 511 F.3d 1072, 1078-79 (10th Cir. 2007) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Property interests are "created by independent sources such as state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991).

Plaintiff cites the three District policies discussed above in support of his claim that he had a property interest in his employment: the MOU, Policy GDQD-R, and Policy GBAA.[32] He argues that either the policies themselves provided him the necessary property interest or that the policies created an implied contract which provided him the necessary property interest.

"By themselves, . . . procedural protections do not support a 'legitimate claim of entitlement' to future employment." *Asbill v. Housing Authority of Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1502 (10th Cir. 1984).

> [S]uch a right attaches only when there are substantive restrictions on the employer's discretion. For example, if a . . . policy specifies the grounds on which an employee may be discharged, or restricts the reasons for discharge to "just cause shown," then the employee has a right to continued employment until such grounds or causes are shown.

*Id.*

---

[32] Plaintiff also cites "repeated assurances" that he would not be laid off as an additional basis for his argument that he had a property interest in his continued employment. But because it is undisputed that Plaintiff was not laid off, i.e., he was fired, the Court disregards this additional basis. Moreover, Plaintiff admitted during his deposition that he was never guaranteed a job. (Doc. # 47-1, p. 295:1-7.)

No such policy exists in this case.  Policy GDQD-R (procedures for dismissal),

Policy GBAA and its regulation (sexual harassment and procedures), and the MOU

merely provide the procedures to which employees may be entitled.  Thus, if anything,

Plaintiff was entitled to certain procedures.  However,

> an entitlement to nothing but procedure cannot be the basis for a property
> interest.  This is because process is not an end in itself, but instead serves
> only to protect a substantive interest to which the individual has a
> legitimate claim of entitlement.  Although detailed and extensive
> procedural requirements may be relevant as to whether a separate
> substantive property interest exists, the procedures cannot themselves
> constitute the property interest.

*Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (internal citations, quotation

marks, and brackets omitted).  Accordingly, the procedures described in these policies,

by themselves, did not create for Plaintiff the needed property interest in his

employment.

Finally, as to Plaintiff's implied contract theory, as discussed above, these

policies did not create an implied contract between Plaintiff and the District. Accordingly,

the Court finds that Plaintiff did not have a property interest in his continued

employment.

### ii)    *Liberty Interest*

Plaintiff also claims the District deprived him of a protected liberty interest.[33] As

the bases for this claim he cites two statements from the District notifying the Colorado

Department of Education ("CDE") of Plaintiff's termination:  (1) an e-mail from the

---

[33] (Doc. # 47 at 30, 35.)

District's counsel, Walter Kramarz, to an employee at the CDE, and (2) a notification form sent by the District to the CDE.   (Doc. # 47-26, Ex. 26.)

The e-mail, dated September 2, 2008, states in part: "Eric: please see attached re. Paul Romero (terminated from employment as a Facility Manager with DPS due to, among other things, sexually objectifying female students and engaging in offensive sexual content discussions with student employees), . . ." (*Id.* at 1.)  The one-page notification form, also dated September 2, 2008, provides several items of information including Plaintiff's date of hire, job title, and date of separation.  It indicates that Plaintiff was terminated for "Employee Conduct/Sexual Harassment[.]"  (*Id.* at 2.)  The Court must determine whether these statements infringed on a protected liberty interest of Plaintiff's.

An individual has a liberty interest in his "'good name and reputation as it affects [his] property interest in continued employment.'"[34] *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir.1994)).  To support a claim for violation of his liberty interests, Plaintiff must show that the defendants made statements that: (1) impugned his good name, reputation, honor, or integrity, (2) were false, (3) occurred in the course of his termination or foreclosed other employment opportunities, and (4) were published. *Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004) (citing *Workman v.*

_____

[34] This statement of law suggests that Plaintiff's liberty interest claim is dependant on the existence of a protected property interest.  The Court earlier found that Plaintiff does not have a protected property interest in his continued employment.  Nevertheless, it will assume for purposes of this section that he did, to demonstrate that even if he had a protected liberty interest (either because of his property interest or independent of his property interest), his claim would still fail.

*Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)). "A person who establishes a liberty-interest deprivation is entitled to a name-clearing hearing." *Evers v. Regents of University of Colo.*, 509 F.3d 1304, 1308 (10th Cir. 2007).

The District argues this claim fails because there is no genuine issue of material fact regarding elements two, three and four—Plaintiff *was* fired for sexual harassment, thus, the at-issue statements were true; he was later hired and thus did not lose other employment opportunities; and the at-issue statements were not published.

As to element number two, the question is not, as Defendants assert, whether the statement accurately reported the reason for Plaintiff's dismissal, i.e., that Plaintiff was fired for sexual harassment. Rather, the question is whether the stigmatizing statement, i.e., Plaintiff sexually harassed a co-worker, is false. *See Melton v. City of Oklahoma City*, 928 F.2d 920, 926-27 (10th Cir.1991) (en banc) ("When a public employer takes action to terminate an employee based upon a public statement of **unfounded** charges . . . a claim for relief is created.") (emphasis added); *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (the statement must be sufficiently derogatory to injure his or her reputation and be capable of being proved false)). In this case, there is a genuine issue regarding the falsity of the statements.

As to element number three, under the test as rendered above the plaintiff must satisfy either the first clause (the statements occurred in the course of firing) *or* the second clause (the statements foreclosed other employment opportunities). The *Workman* court, which formulated this test, used the word "or." *See Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). However, the Tenth Circuit has since indicated that the at-issue statements must have been made in the course of

termination **and** that they foreclosed other employment opportunities.  *Renaud v. Wyo.*
*Dep't of Family Servs.*, 203 F.3d 723, 728 n. 1 (10th Cir. 2000).  If the test includes both
clauses, then Plaintiff's claim fails.  It is undisputed he obtained new employment in
June 2008, after having applied for only two jobs.  But the Court need not resolve this
uncertainty because, regardless of element number three, Plaintiff cannot establish a
genuine issue of material fact regarding element number four–whether the statements
were "published."

        There is no evidence the e-mail and notification form were anything other than
confidential statements, i.e, not published.[35] "'A non-public communication cannot form
the basis for a claim that petitioner's interest in his good name, reputation, honor or
integrity has been impaired.'" *Sanchez v. Dubois*, 291 F. App'x 187, 191 (10th Cir.
2008) (unpublished) (citing *Bishop v. Wood*, 426 U.S. 341 (1976); *see Asbill v. Hous.*
*Auth. of Choctaw Nation of Okla.,* 726 F.2d 1499, 1503 (10th Cir. 1984)
("[I]ntragovernment dissemination, by itself, falls short of the Supreme Court's notion of
publication: 'to be made public.'").  Because Plaintiff cites no evidence showing a
genuine issue regarding whether these statements were made public, the Court,
applying the law to the undisputed facts, finds these statements were not published.

---

[35]  Indeed, both contain confidentiality notices suggesting they were not made public.
The notification form states at the top in bold print "CONFIDENTIAL[.]" And the e-mail contains
the following notice: "Confidentiality Notice: This e-mail message, including attachments, is for
the sole use of the intended recipient(s) and may contain confidential information.  If you have
received this communication in error, please immediately notify the sender by e-mail and delete
the original message.  Please do not review, distribute, or copy the message.  Thank you for
your cooperation."  (Doc. # 47-26.)

Accordingly, these statements cannot form the basis for a claim that Plaintiff's interest in his "good name, reputation, honor, or integrity" has been deprived.

### b) *Whether Plaintiff Received Adequate Due Process*

Even if Plaintiff did have a protected interest in his employment, the Court finds the evidence does not present a genuine issue of material fact regarding whether he received adequate due process.

> "An essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation omitted). The Supreme Court has described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Id.* (citing *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (emphasis in original)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (citation omitted).

> For government employees, such a hearing requires: (1) "oral or written notice [to the employee] of the charges against him"; (2) "an explanation of the employer's evidence"; and (3) "an opportunity [for the employee] to present his side of the story." *Montgomery*, 365 F.3d at 936 (citing *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487); *see also Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir. 1993). "A full evidentiary hearing is not required prior to an adverse employment action." *West v. Grand County*, 967 F.2d 362, 367 (10th Cir. 1992). Instead, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond." *Id.*

*Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009).

Here, the undisputed facts show that Plaintiff received all the process he was due. On April 8, 2008, Bob Mickelson and Debra Rodriguez interviewed Plaintiff regarding the accusations against him. He denied them. At the end of the interview, Rodriguez placed Plaintiff on administrative leave with pay. Mickelson undertook an

investigation of the accusations. He interviewed Plaintiff, Martinez, Dew, and other employees and students, and issued a report on his investigation.[36] Based on the findings of this investigation, Rodriguez informed Plaintiff via letter that she was recommending he be dismissed. Plaintiff requested a pre-termination hearing pursuant to Policy GDQD-R. On April 29, 2008, he received it. Hearing officer Barnes heard from both sides and, on May 5, 2008, issued a written decision upholding Rodriguez's recommendation.[37] During this time Plaintiff was still being paid. After Barnes's decision, Plaintiff was placed on administrative leave without pay.

On May 8, 2008, Plaintiff requested an independent arbitration hearing before a neutral hearing officer, also pursuant to Policy GDQD-R. He received a two-day hearing, on June 27 and July 14, 2008, before Hearing Officer John P. DiFalco.[38] Plaintiff was represented by Mr. Borrego. Both sides presented evidence. Mr. DiFalco found the allegations against Plaintiff credible. He found Plaintiff not credible. Thus, on July 18, 2008, Mr. DiFalco issued a written decision recommending that Rodriguez's recommendation be upheld.[39] Finally, on August 1, 2008, Plaintiff was fired. These facts are undisputed.

---

[36] (Doc. # 45-4, Ex. K, Mickelson Investigation Report.)

[37] (Doc. # 45-4 at 25, Ex. N, Written Decision of Scott Barnes.)

[38] Plaintiff argues DiFalco was biased because he was to be paid by the District. However, because it is undisputed that DiFalco was not employed by the District and because he was going to be paid regardless of the outcome, the Court finds this evidence does not create a genuine issue regarding DiFalco's alleged bias. Thus, the Court decides as a matter of law that DiFalco was not biased.

[39] (Doc. # 45-4, Ex. P, Decision of Hearing Officer John P. DiFalco.)

Plaintiff, however, takes issue with how both hearings were conducted. The Court need only consider the first hearing. Due Process requires only that Plaintiff receive "some kind of a hearing" before being deprived of a protected interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Thus, if the hearing before Barnes was adequate, then due process was satisfied without regard to the second hearing.

Plaintiff argues that Barnes did not review every page of Plaintiff's exhibits and that he and representatives were given no opportunity to question the credibility of his accusers. As to the latter point, the undisputed evidence shows otherwise. Plaintiff testified in his deposition that his representative, Mr. Borrego, questioned the character of his accusers.[40] Moreover, Barnes did consider the fact that Martinez and Dew had been criticized by Plaintiff in their work prior to their accusations.[41] Accordingly, the Court finds that the evidence does not create a genuine issue of material fact regarding whether Plaintiff received adequate due process prior to his termination.

Having determined that none of Plaintiff's contract and due process claims can survive summary judgment, the Court now considers whether he can proceed to trial on his tort claims.

**C.     *Plaintiff's Tort Claims***

Plaintiff alleges that Defendants Dew and Martinez are liable to him for willful and wanton negligence and defamation. Defendants argue these claims should be

---

[40] (Doc. # 47-1, Ex. 1, Deposition of Plaintiff, p. 243:10-244:7, p 246-47:24-10; Doc. # 45-4, Deposition of Scott Barnes, Ex. M, p. 24:12-25; Doc. # 47-3, Ex. 3, p. 23:13-16.)

[41] (Doc. # 45-4 at 25, Ex. N, Written Decision of Scott Barnes.)

dismissed on several grounds, of which the Court need only consider one—whether

Plaintiff's tort claims are barred by the doctrine of collateral estoppel because they were

adjudicated before Hearing Officer DiFalco.

> Collateral estoppel bars relitigation of an issue determined at a prior proceeding if (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Industrial Comm'n v. Moffat County School Dist.*, 732 P.2d 616, 619-20 (Colo. 1987)

(footnote omitted) (citing *People v. Hearty*, 644 P.2d 302, 312 (Colo. 1982); *Pomeroy v.*

*Waitkus*, 517 P.2d 396, 399 (Colo. 1973)).

Although the doctrine of collateral estoppel was developed in the context of

judicial proceedings, in a proper case, the doctrine may be applied to administrative

proceedings.  *See Mid-Continent Resources, Inc. v. Looby*, 877 P.2d 1385, 1387 (Colo.

App. 1994).  Plaintiff does not contest whether this is a "proper case" for which collateral

estoppel may apply.  Accordingly, the Court assumes it is.

The question whether collateral estoppel applies depends on how the Court

defines the "issue" adjudicated before DiFalco versus the "issue" before the Court.  Only

then can the Court identify whether the two are identical and, thus, decide whether

collateral estoppel may apply.

The Court finds that the four prerequisites for collateral estoppel are met in this

case.  First, the principal issue adjudicated in the hearing before DiFalco was whether

competent evidence existed to support the decision that Plaintiff should be fired, i.e.,

26

whether Plaintiff sexually harassed Dew and made inappropriate comments in front of students. The issue here is identical. The central current running through all of Plaintiff's tort claims – willful and wanton conduct and various forms of defamation *per se* – is that Dew and Martinez lied when they described what Plaintiff had allegedly done. That is, Plaintiff, by virtue of his tort claims, is claiming that the inappropriate conduct for which he was fired never actually happened. But whether this conduct actually occurred was the exact issue before Hearing Officer DiFalco. After two days and a "parade of witnesses," DiFalco concluded that:

> The District has provided more than sufficient evidence substantiating its grounds for discharge. It is an unfortunate result for [Plaintiff], but one which he, through his own conduct, has brought upon himself. School District officials had to act under the circumstances and the Hearing Officer, after considering all the evidence in this case, is left with no other logical conclusion but to determine that [Plaintiff] did engage in the misconduct and such clearly warrants his discharge from employment.

(Doc. # 45-4, Ex. P, at 18.)

Second, as to whether Plaintiff was a party to the prior proceedings, he obviously was; the hearing addressed the allegations again him. Third, as to whether there was a final judgment on the merits at the prior proceeding, there was not; however, DiFalco's decision directly lead to one. DiFalco found competent evidence existed supporting the contention that Plaintiff had acted inappropriately. Upon reviewing his findings, the superintendent's designee, Ms. Shayne Spalten, issued a "final decision" terminating Plaintiff's employment.[42]

---

[42] (Doc. # 61-3, Ex. X, ¶¶ 5, 6; Doc. # 45-5, Ex. Q.)

Finally, as to whether Plaintiff had a full and fair opportunity to litigate the issue in the prior proceeding, he contends the hearing was not fair. The Court, however, finds otherwise. Plaintiff's main contention is that DiFalco was not impartial. Although it is undisputed that DiFalco was not an employee of the District,[43] Plaintiff contends DiFalco was biased because he was paid by the District.[44] It is true he was paid by the District. That fact alone, however, does not mean DiFalco was partial to the District. *See Hicks v. City Watonga*, 942 F.2d 737, 746 (10th Cir. 1991). For example, despite being paid by the District, it is undisputed that DiFalco has issued decisions both for and against the District.[45] In addition, it is undisputed that Plaintiff was represented at the hearing and that Plaintiff has taken no issue with the quality of that representation. Finally, the record reflects that Plaintiff had several character witnesses testify on his behalf,[46] including the principal of the school, Ms. Ann Myers. In sum, Plaintiff has failed to persuade the Court that the hearing was anything but fair. *See, e.g., Corstvet v. Boger*, 757 F.2d 223, 229 (10th Cir. 1985) ("a substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair.")

Accordingly, given the presence of these four factors, the Court finds that Plaintiff's tort claims against Dew and Martinez are barred by collateral estoppel.

---

[43] (Doc. # 47 at 15, ¶ 88.)

[44] (Doc. # 47 at 27-28, ¶ 52.)

[45] (Doc. # 45-4 ¶ 5, Ex. O, Affidavit of Walter Kramarz, Esq.)

[46] DiFalco's decision states that twelve witnesses testified on behalf of Plaintiff. Plaintiff disputes the number was that high. (Doc. # 47 at 16, ¶ 97.)

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendants' Motion for

Summary Judgment (Doc. # 45) is GRANTED in full.  Accordingly, this case is

DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that the Final Trial Preparation Conference, scheduled for

July 23, 2010, and the five-day jury trial, scheduled for August 2, 2010, are VACATED.

It is

FURTHER ORDERED that Defendants shall have their costs by the filing of a Bill

of Costs with the Clerk of the Court within fourteen days of the entry of judgment.

DATED:  July __22__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge